**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **WILD MAN LAB LLC and WILD MAN DRINKING COMPANY,** | |
| Plaintiffs, | **Case No.** _____ |
| v. | **JURY TRIAL DEMANDED** |
| **WHALECO INC., d/b/a Temu** | |
| Defendant. | |

## Complaint for Patent, Trademark, and Copyright Infringement

Plaintiffs Wild Man Lab LLC and Wild Man Drinking Company (collectively, "Wild Man" or "Plaintiffs"), by and through their undersigned attorneys, file this Complaint against Defendant Whaleco Inc. ("Temu") for patent infringement, trademark infringement, and copyright infringement, and allege, upon knowledge, information, and belief that Temu is infringing Wild Man patents, trademarks, and a copyright.

The Exhibits filed with this Complaint are set forth below.

| Exhibit No. | Complaint Exhibit Name |
|---|---|
| A | U.S. Patent No. 11,518,663 |
| B | U.S. Patent No. 11,731,868 |
| C | Trademark Registration No. 7,136,238 |
| D | Trademark Registration No. 7,154,135 |
| E | Copyright Registration No. VA 2-369-440 |
| F | Email receipt for October 4, 2023 Temu Order |
| G | Delivery confirmation for October 4, 2023 Temu Order |
| H | Picture of packaging for products ordered in Ex. G. |
| I | Picture of packaging and products ordered in Ex. G. |
| J | Pictures of Representative Temu Knockoff from products ordered in Ex. G |
| K | Claim chart for Representative Temu Knockoff and claims 1 and 6 of the '663 Patent |
| L | Claim chart for Representative Temu Knockoff and claims 1 and 6 of the '868 Patent |
| M | "Temu | About Temu" website page |
| N | "Temu | Shipping Info" website page |
| O | "Where Does Temu Ship From" website page |
| P | Receipt for products purchased in Ex. G |

**Nature of the Action**

1.      Wild Man brings this action under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., based on Temu's infringement of U.S. Patent No. 11,518,663 ("'663 Patent") (attached as Exhibit A), which issued on December 6, 2022, and U.S. Patent No. 11,731,868 and ("'868 Patent") (attached as Exhibit B), which issued on August 22, 2023.

2.      Wild Man brings this action under the Trademark Laws of the United States15 U.S.C. § 1051 et seq. (Lanham Act) for Temu's infringement of Plaintiff's federally-registered trademarks WILD MAN DRINKING COMPANY® and THE KRAK'IN® (attached as Exhibits C and D).

3.      Wild Man brings this action under the Copyright Laws of the United States, 17 U.S.C. § 101 et seq., for Temu's infringement of Wild Man's copyrighted works (Federal Copyright Registration No. VA 2-369-440) (attached as Exhibit E).

**Parties**

4.      Plaintiff, Wild Man Lab LLC, is a Pennsylvania limited liability company with its principal place of business at 2537 Montrose Street unit B, Philadelphia, PA 19146.

5.      Plaintiff, Wild Man Drinking Company, is a Pennsylvania limited liability company with its principal place of business at 2505 Washington Avenue, Philadelphia, PA 19146.

6.      Defendant, Whaleco Inc. ("Temu"), is a Delaware corporation with a principal place of business at 31 St. James Avenue, Boston, Massachusetts 02116.  Whaleco Inc. d/b/a "Temu" and operates an online retail store under the Temu brand at https://www.temu.com.  "Temu" means "Team Up, Price Down."

**<u>Subject Matter Jurisdiction</u>**

7.     This Court has subject matter jurisdiction over the patent claims asserted in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the claims herein arise under the Patent Laws of the United States, 35 U.S.C. § 1, et seq.

8.     This Court has subject matter jurisdiction over the trademark claims asserted in this action pursuant to 28 U.S.C. § 1338(b) and the Lanham Act, 15 U.S.C. § 1051 et seq.

9.     This Court has subject matter jurisdiction over the copyright claims asserted in this action pursuant to 28 U.S.C. § 1338(b) and the Federal Copyright Act, 17 U.S.C. § 100 et seq.

**<u>Personal Jurisdiction</u>**

10.     Personal jurisdiction over Temu is proper in this District because Temu is a Delaware corporation, and therefore this Court has general jurisdiction over Temu.

11.     Personal jurisdiction over Temu is further proper in this District because Temu has purposively availed itself of the laws and forum of Delaware and reasonably anticipated that it could be sued in this District.  For example, Temu has committed acts of patent, trademark, and copyright infringement as described herein in this District and has derived substantial revenue from its infringement in this District.  Temu's contacts with this District are systematic and continuous.

**<u>Venue</u>**

12.     Venue is proper over Temu for Wild Man's patent infringement claims under 28 U.S.C. § 1400(b) because Temu is incorporated in Delaware and therefore resides in Delaware under 28 U.S.C. § 1400(b).

13.     Venue is proper over Temu for Wild Man's trademark claims pursuant to 28 U.S.C. § 1391(b)(1) because Temu is incorporated in Delaware.  Venue is proper over Temu for Wild Man's

trademark claims pursuant to 28 U.S.C. § 1391(b)(2) because a substantial parts of the events (*e.g.*, Temu's infringing activity and false designations of origin) giving rise to Wild Man's federal trademark claims occurred in this District.

14.    Venue is proper over Temu for Wild Man's copyright claims pursuant to 28 U.S.C. § 1391(b)(1) because Temu is incorporated in Delaware.  Venue is proper over Temu for Wild Man's copyright claims pursuant to 28 U.S.C. § 1391(b)(2) because a substantial parts of the events (*e.g.*, Temu's infringing activity) giving rise to Wild Man's copyright claims occurred in this District.

15.    Venue is further proper in this District over Wild Man's trademark and copyrights claims against Temu under the doctrine of pendent venue because the acts giving rise to those claims arise out of and are related to the facts giving rise to Wild Man's patent claims against Temu.

## Facts

### Wild Man's Business and Products

16.    Wild Man is a beverage drinking accessory company.

17.    After Mr. Nicholas Widmann graduated Drexel University with a Bachelor of Science degree in mechanical engineering in 2020, Mr. Widmann founded Wild Man.

18.    Starting in about August 2020, Mr. Widmann began developing a device for "shotgunning" a beverage (*e.g.,* beer).  Shotgunning is a well-known method of consuming a beverage from a can, particularly beer.  Generally, people shotgun a beverage by puncturing a beverage can with a key, thumb, or other device to create a hole in the can, placing the hole next to their mouth, and opening the can tab so that fluid flows.  A problem with this technique is that it is not safe. Typically, a key, object, or thumb is used to initially puncture the can.  The initial puncture creates a small hole and bends the can metal.  The bent metal often has sharp edges.  The sharp metal edges may extend outward from the can.  In many instances, the key/object/thumb has to be

4

finessed to create a bigger hole and the sharp metal edges have to be bent into the can.  These sharp metal edges can cut a user's hand when puncturing the can, when creating a bigger hole after the initial puncture, and when bending the metal edges from protruding outward.  Also, if the user misses the can with the key or other object when attempting to puncture the can, the user may suffer an injury.  Another problem with this technique is that a seal is not created when the can is punctured, so liquid can squirt out during puncturing, after puncturing, while moving the can to a user's mouth, and while drinking.  This can be messy.  A further issue with this technique is that placing a user's mouth against the side of a can is not hygienic.

19.    Mr. Widmann created a device that could address at least these problems.  Some of Mr. Widmann's design goals were to provide a device that safely punctures a hole in a can, prevents spilling the beverage, prevents cuts to the hand and mouth, and is more hygienic than prior techniques.  Further, the tool would also have to create an enclosure around the hole, irrespective of the can's shape or size, to prevent leaking.

20.    To overcome the problems that existed, Mr. Widmann invented the widely popular shotgunning device that is known by its trade name, THE KRAK'IN®.  Wild Man sold THE KRAK'IN® and THE KRAK'IN® 2.0.  THE KRAK'IN® was the first product released by Wild Man.  The second version was THE KRAK'IN® 2.0.  THE KRAK'IN® 2.0 is shown below:

**THE KRAK'IN® 2.0**



21.    THE KRAK'IN® is shown below.  THE KRAK'IN® has a pivot arm that can be placed against the bottom of a can.  The pivot arm provides a fulcrum for rotating THE KRAK'IN® relative to the can.  The entry portion has a piercing portion, such that when THE KRAK'IN® is rotated relative to the can, the piercing portion is rotated into contact with the can side wall and punctures the can.  A swift metal cut is made with the metal extending inward into the can to prevent injury.   THE KRAK'IN® also has a gasket for creating a seal over the created can hole. In order to protect the user, THE KRAK'IN® has a spout for a user to drink from, so that the user does not have to place his/her mouth into contact with a can.  The entry portion has a piercing portion having apertures so that fluid can flow from the can, through apertures in the entry portion, and through the bore in the spout to a user.

## THE KRAK'IN®

Piercing Portion

Gasket

Pivot arm with curved portion

Shroud

Entry Portion

Spout with bore



## THE KRAK'IN®







22.    As shown below, THE KRAK'IN® can be coupled to the bottom of a can.  THE KRAK'IN® is rotated relative to the can about the connection point between THE KRAK'IN® and the can, such that THE KRAK'IN® swiftly punctures a hole in the can sidewall.  A seal is created between THE KRAK'IN® and the can sidewall.  A user can safely drink from THE KRAK'IN® spout.

### Use of THE KRAK'IN®




23.    THE KRAK'IN® safely punctures a hole in a can and plugs into the side wall of the beverage can, without exposing the user to any sharp metal tears created during puncturing because the deformed metal is pushed into the can by THE KRAK'IN®.  THE KRAK'IN® also prevents other unsanitary conditions because the user does not have to place his/her mouth against the can. Moreover, THE KRAK'IN® creates a seal to prevent leaking.

24.    Wild Man began its first round of sales *via* its website in January 2022 (https://wildmandrinking.com/products/the-krakin-2).   THE KRAK'IN® product launch was successful.  Wild Man quickly sold out of its initial THE KRAK'IN® inventory.

25.    Since January 2022, THE KRAK'IN® has been successful and has generated significant revenue in just over two years of sales.

26.    Wild Man's brand and THE KRAK'IN® product's online presence is strong, not only on its own website, but on the various social media platforms through which it engages with the public.  Wild Man's Instagram account has over 18,300 followers.  Wild Man's TikTok account has over 500,000 followers and has about 377 videos that provide tutorials and engagement with

Wild Man's customers. Wild Man's Facebook account has over 3,100 followers. Wild Man uses THE KRAK'IN® and WILD MAN DRINKING COMPANY® marks on these social media platforms.

27.     THE KRAK'IN® has also been praised throughout social media platforms. Examples of praise for THE KRAK'IN® that have been uploaded by Wild Man's customers to the Wild Man website can be found at https://wildmandrinking.com/products/the-krakin#scroll-here. Below are just some examples of the praise that THE KRAK'IN® has received.

**Examples of Praise for THE KRAK'IN®**



**Wild Man's Patents**

28.    The '663 Patent, entitled "Beverage Drinking Apparatus," was issued by the United States

Patent and Trademark Office ("USPTO") on December 6, 2022.  The '663 Patent matured from

U.S. Patent Appl. No. 63/188,530, filed on May 14, 2021 and claims priority to United States

provisional patent application serial no. 63/188,530.  A true and correct copy of the '663 Patent is

attached hereto as Exhibit A.

29.    Wild Man Lab LLC is the assignee and owner of the of the '663 Patent.  Wild Man

Drinking Company has exclusive license rights to the '663 Patent including the right to exclude

others and to enforce the '663 Patent and recover damages for past and future infringement.

30.    The '663 Patent is valid, enforceable, and was duly issued in full compliance with Title 35

of the United States Code.

31.    Independent claim 1 of the '663 Patent is set forth below:

A beverage drinking apparatus comprising:

a spout comprising a bore;

a pivot arm comprising a curved portion, wherein the curved portion defines a
fulcrum for rotating the beverage drinking apparatus;

a shroud extending from the spout; and

an entry portion extending from a first end of the spout, the entry portion
comprising a flow portion defining a plurality of first apertures and a piercing
portion that is distal from the shroud, the piercing portion configured to pierce a
hole in a sidewall of a beverage can as the beverage drinking apparatus is pivoted
about the fulcrum with the curved portion engaged with a bottom  surface of the
beverage can, wherein the entry portion is curved downward toward the pivot arm
from the shroud to the piercing portion such that the piercing portion and the flow
portion penetrate the hole as the beverage drinking apparatus is further pivoted
about  the fulcrum such that liquid from the beverage can enters the bore through
the plurality of first apertures,

and wherein the shroud configured to partially surround the sidewall of the
beverage can where the entry portion is received within the hole, and wherein the

shroud comprises a concave inner face that is configured to be proximate to the sidewall of the beverage can when the entry portion is received within the hole.

32.    Wild Man's THE KRAK'IN® and THE KRAK'IN® 2.0 products are covered by at least claims 1 and 6 of the '663 Patent.

33.    The '868 Patent, entitled "Beverage Drinking Apparatus," was issued by the USPTO on August 22, 2023.  The '868 Patent matured from U.S. Patent Appl. No. 17/971,0121, which claims the benefit of the filing dates of United States patent application no. 17/744,226 and U.S. Provisional Patent Appl. No. 63/188,530, filed May 14, 2021.  A true and correct copy of the '868 Patent is attached hereto as Exhibit B.

34.    Wild Man Lab LLC is the assignee and owner of the of the '868 Patent.  Wild Man Drinking Company has exclusive license rights to the '868 Patent including the right to exclude others and to enforce the '868 Patent and recover damages for past and future infringement.

35.    The '868 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

36.    Independent Claim 1 of the '868 Patent is exemplary of its claims and is:

A beverage drinking apparatus comprising:

a spout comprising a bore;

a pivot arm comprising a curved portion that defines a fulcrum for rotating the beverage drinking apparatus;

a shroud extending from the spout; and

an entry portion extending from a first end of the spout, the entry portion comprising a flow portion defining a plurality of first apertures and a piercing portion that is configured to pierce a hole in a sidewall of a beverage can as the beverage drinking apparatus is pivoted about the fulcrum with the pivot arm engaged with a bottom surface of the beverage can, the entry portion being curved downward toward the pivot arm from the shroud to the piercing portion such that the piercing portion and the flow portion penetrate the hole as the beverage drinking apparatus is further pivoted about the fulcrum

such that liquid from the beverage can is able to flow into the bore through the plurality of first apertures,

wherein the shroud is configured to be proximate to the sidewall of the beverage can when the entry portion is received within the hole.

37.    Wild Man has sold KRAK'IN® products that are covered by at least claims 1 and 6 of the '868 Patent.

38.     The '663 and '868 Patents are collectively referred to as the "Krak'in Patents."

**Wild Man's Trademarks**

39.    Wild Man owns a valid United States federal trademark registration for the WILD MAN DRINKING COMPANY® Mark, Reg. No. 7,136,238 covering "[b]everageware in the nature of a drinking device attachable to a beverage can through which the beverage may be consumed; Beverage drinking apparatus in the nature of an opener attachment with a pressurized seal and a drinking spout" in International Class 21, registered on August 15, 2023 (Ex. C).  The WILD MAN DRINKING COMPANY® trademark consists of standard characters without claim to any particular font, style, size, or color.

40.    Wild Man owns a valid United States federal trademark registration for THE KRAK'IN® Mark, Reg. No. 7,154,135 covering "[b]everageware in the nature of a drinking device attachable to a beverage can through which the beverage may be consumed; Beverage drinking apparatus in the nature of an opener attachment with a pressurized seal and a drinking spout" in International Class 21, registered on September 5, 2023 (Ex. D).  THE KRAK'IN® trademark consists of standard characters without claim to any particular font, style, size, or color.

41.    True and correct copies of Wild Man's registrations for the WILD MAN DRINKING COMPANY® and THE KRAK'IN® marks (together the "Wild Man Marks") are attached hereto as Exhibits C and D.

42.    THE KRAK'IN® and THE KRAK'IN® 2.0 are: beverageware in the nature of drinking

devices attachable to a beverage can through which beverages may be consumed and beverage drinking apparatuses in the nature of openers that attach to a can with a pressurized seal and a drinking spout.

43.    Wild Man has used the Wild Man Marks in commerce throughout the United States continuously since at least 2022 and has invested over a million dollars in connection with the manufacture, distribution, offering for sale, sale, marketing, advertising, and promotion of the Wild Man Marks.  Examples of this are Wild Man's online marketing through outlets such as TikTok and Instagram, sponsored online advertisements with Google and YouTube, and paying promoters/influencers for promoting THE KRAK'IN® products on social media platforms.  Wild Man has also used the Wild Man Marks to promote THE KRAK'IN® and THE KRAK'IN® 2.0 on its website since at least 2022 (https://wildmandrinking.com).

44.    For example, Wild Man has used the WILD MAN DRINKING® trademark on the Wild Man website, product packaging, and clothing as shown below to promote THE KRAK'IN® products.  Wild Man has used the WILD MAN DRINKING® trademark on Wild Man's Instagram Account  (https://www.instagram.com/p/CYhMzF-FZdo/?igsh=c3oybWIydXVlczlj)  to  promote THE KRAK'IN ® products.

**Example of Wild Man's use of the WILD MAN DRINKING COMPANY® Trademark**







45.    Wild Man has used THE KRAK'IN® trademark on its beverageware/beverage drinking apparatus product packaging as shown below, on its website, and on the Wild Man Instagram account since at least 2022.

**Example of Wild Man's use of THE KRAK'IN® Trademark on Product Packaging**



**Example of Wild Man's use of THE KRAK'IN® Trademark on Wild Man's Website**



46.     As a result of Wild Man's widespread, continuous, and exclusive use of the Wild Man Marks to identify its goods and services and Wild Man as their source, Wild Man enjoys valid and subsisting federal rights to the Wild Man Marks.

47.     Wild Man's beverageware/beverage drinking apparatuses have been successful and the Wild Man Marks are a valuable asset.

48.     The Wild Man Marks are distinctive to both the consuming public and Wild Man's trade. The products that Wild Man offers under the Wild Man Marks are of high quality.  Wild Man devotes significant resources to product development, quality control, and providing customer service to customers of its retail channels, all to ensure that the products it offers are reflective of, and consistent with, its brand's prestige.

49.     To protect the integrity of its brand, Wild Man does not license the Wild Man Marks to

others in connection with selling and distributing beverage drinking devices.

## Wild Man's Copyright Registration

50.     Wild Man obtained Federal Copyright Registration No. VA 2-369-440 for certain works associated with marketing THE KRAK'IN®'s as of November 6, 2023.  Wild Man's copyright registration is attached as Exhibit E.

## Temu's Infringement of the Krak'in Patents

51.      While perhaps not yet a household name, Temu purports to be one of the fastest growing online retailers in the United States.  According to its website, "Temu is an online marketplace that connects consumers with millions of sellers, manufacturers and brands" (Ex. M).  Temu is owned by a foreign company PPD Holdings, also known as Pinduoduo.    PPD Holdings is a publicly traded company.

52.     Temu is an online store that sells a range of products ranging from clothing to kitchenware and electronic devices.  Temu advertises products for sale on at least Temu's online retail store at temu.com,  Temu's  mobile  applications,  and  Temu's  direct-to-consumer  advertisements (collectively "Temu Platforms.").

53.     Temu is colloquially known for advertising low cost, poor quality, and/or knock-off products manufactured in foreign countries.  The products being sold on temu.com are often considerably cheaper than similar sold on other online retailor websites.  Wikipedia reports instances where Temu also has been reported to have not respected the rights of others (https://en.wikipedia.org/wiki/Temu_(marketplace)).  A simple Google search on "what is Temu" reveals that following answer dated September 27, 2023:

18

54.    Wild Man noticed that Temu was advertising blatant Krak'in knockoffs for sale in 2023 referred to herein as "Krak'in Knockoffs."   Below is a screenshot taken on November 10, 2023 from the Temu website in response to the search "Kraken Shotgunning Tool" on the Temu website. As shown, the search revealed that Temu lists Krak'in Knock-offs for sale for less than $3/unit. Krak'in Knockoffs have been offered for sale on temu.com for as little as $1.69 each and often in the range of $2-$4.  By contrast, Wild Man sells THE KRAK'IN® product for about $19.99.  This screen shot is illustrative of the Krak'in Knockoffs that have been sold through Temu's Platforms starting in about July 2023.

**Example Screenshot of Temu's Website**



55.    As can be seen in an exploded view of a portion of the above screenshot, Temu describes the Krak'in Knockoffs as an "innovative shotgun tool."

**Exploded View of Temu Website**



56.    Temu advertised Krak'in Knockoffs for sale through direct-to-consumer advertising.  For example, as shown below in the exemplary August 30, 2023 and November 13, 2023 emails sent from Temu to Mr. Widmann, Temu advertised Krak'in Knockoffs for sale.  The email examples below are examples of Temu's direct-to-consumer advertisements for Krak'in Knockoffs.  Temu's direct-to-consumer advertisements do not identify a third-party seller of the Krak'in Knockoffs.  Temu's direct-to-consumer advertisements identify the price and the product for sale and have a button to click for purchasing the product.  Temu promotes the Krak'in Knockoffs as "highly rated" and "getting popular" in its emails.  Temu's direct-to-consumer advertisements for Krak'in Knockoffs were sent from by Temu from a Temu email address: email@market.temuemail.com to consumers that were identified by Temu using Temu's software from the consumer's interaction with the Temu Platforms.  Also, Temu adjusted and controlled the pricing in the direct-to-consumer advertisements below by providing a discount from $15.49 to $4.49 and from $10.09 to $3.14.

**Exemplary Temu Direct-to-Consumer Advertisements for Krak'in Knockoffs**





57.     The Krak'in Knockoffs being sold on the Temu Platforms are copies of the patented THE

KRAK'IN®.  Krak'in Knockoffs were purchased from the temu.com website in response to an

offer for sale on the Temu.com website as shown for example in Exhibits F-J.  Exhibit F is a Temu

order confirmation for three Krak'in Knockoffs placed on the temu.com website.  Exhibit G is the

DHL tracking information for the Krak'in Knockoffs that Temu produced in response to the order

placed in Exhibit F.  Exhibits H and I are pictures of the package received in response to the order

placed in Exhibit F.  Exhibit J is pictures of one of three products received in response to the order in Exhibit F.

58.    The Krak'in Knockoff shown in Exhibit J is representative of the Krak'in Knockoffs offered for sale and sold through the Temu Platforms and imported into the United States in response to orders placed on the Temu Platforms.  The Krak'in Knockoff shown in Exhibit J is referred to as the "Representative Temu Knockoff."

59.    The Representative Temu Knockoff is within the scope of claims 1 and 6 of the '663 Patent and claims 1 and 6 of the '868 Patent, as shown in the claims charts attached as Exhibits K and L. The Representative Temu Knockoff is a copy of Wild Man's technology patented in the Wild Man Patents.

60.    Temu advertised Krak'in Knockoffs for sale on Temu's mobile application.

61.    Krak'in Knockoffs were offered for sale in the United States on the Temu Platforms.

62.    Krak'in Knockoffs were sold in the United States through orders placed on the Temu Platforms from the United States.

63.    Krak'in Knockoffs were imported into the United States in response to orders placed through the Temu Platforms.

64.    Wild Man's outside counsel Ryan Peddle at Flaster Greenberg PC sent the following notice to Temu on August 3, 2023 providing actual notice to Temu of the '663 Patent and Temu's infringement of the '663 Patent.

**Infringement Notice to Temu**

| | |
|---|---|
| **From:** | Peddle, Ryan |
| **Sent:** | Thursday, August 3, 2023 8:31 AM |
| **To:** | ipprotection@temu.com |
| **Subject:** | Patent Infringement Violation Report (HH14163, PH18526, and UA18840) |
| **Attachments:** | Exhibit A - U.S. Patent No. 11518663.pdf; Exhibit B - Claim Chart - ASIN B0BFCNF76D.pdf |

To whom it may concern,

I am submitting a utility patent infringement violation report on behalf of Wild Man Lab LLC that identifies several listings that are infringing at least claim 1 of U.S. Patent No. 11,518,663 (attached) by offering the product for sale in the United States. I am also submitting a claim chart for an identical product to Item ID: HH14163. But, Item ID's PH18256 and UA18840 are also infringing at least claim 1 of U.S. Patent No. 11,518,663 by offering the products for sale in the United States.

Wild Man Lab LLC is a Limited Liability Company organized and existing under the laws of the State of Pennsylvania with its principal place of business at 2537 Montrose St. Unit B, Philadelphia, Pennsylvania 19146. Wild Man owns the '663 Patent and holds all rights necessary to bring this action.

Accordingly, we are respectfully requesting that Temu abide by their intellectual property policy and remove the following listings that infringe at least claim 1 of U.S. Patent No. 11,518,663:

HH14163 (https://www.temu.com/1pc-beer-bong-shotgun-innovative-beer-bong-shotgun-tool-with-built-in-funnel-golf-course-beach-grad-party-bachelorette-party-college-house-party-g-601099518451674.html?top_gallery_url=https%3A%2F%2Fimg.kwcdn.com%2Fproduct%2FFancyalgo%2FVirtualModelMatting%2Fb0c9bc3d0b338b963548946afda957d6.jpg&spec_gallery_id=2003670980&refer_page_sn=10009&refer_source=0&freesia_scene=2&_oak_freesia_scene=2&search_key=beer%20shotgun%20tool&refer_page_el_sn=200049&_x_sessn_id=gibhr5vna2&refer_page_name=search_result&refer_page_id=10009_1691064998449_u8riyzjfoq)

PH18526 (https://www.temu.com/1pc-the-krakin-2-0-innovative-shotgun-tool-with-built-in-funnel-great-for-tailgate-golf-course-beach-grad-party-bachelorette-party-college-house-party-spring-break-snowboarding-etc-g-601099520652102.html)

UA18840 (https://www.temu.com/1pc-innovative-shotgun-tool-with-built-in-funnel-great-for-tailgate-golf-course-beach-grad-party-bachelorette-party-college-house-party-spring-break-snowboarding-etc-g-601099520709036.html?__csr=1&__torl=)

Please do not hesitate to reach out should you require any further information.

Best Regards,
Ryan Peddle

Ryan A. Peddle
**Flaster Greenberg PC**
1717 Arch Street, Suite 3300, Philadelphia, PA 19103
Tel: 215.587.5612 · ryan.peddle@flastergreenberg.com

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender, so that our address record can be corrected.

65.     To curb the rampant copying and sale of Krak'in Knockoffs through the Temu Platforms, Wild Man filed Intellectual Property Infringement Reports in accordance with Temu's Intellectual Property Policy.  Temu's Intellectual Property Policy required that Wild Man specifically identify the infringing products by URL on an individualized basis.  But the sheer number of Krak'in Knockoffs being sold on temu.com was overwhelming.  Wild Man was playing "Whac-A-Mole." New Krak'in Knockoffs were being added to Temu's website faster than Wild Man could prepare and file Intellectual Property Infringement Reports with Temu.

66.     Wild Man engaged a brand protection company, Red Points Brand Protection, to find, track, and remove counterfeit listings and sellers from online retailers like temu.com.  To date, Red Points has submitted more than one hundred (100) Intellectual Property Infringement Reports to temu.com that provided Temu with actual notice of its infringement of at least the '663 Patent.

67.     Through Red Points, Wild Man gave actual notice to Temu of its infringement of the '663 Patent as early as August 2023.  While Temu acted on some reports, others went unheard.  In some instances, Temu failed to act or even acknowledge the Intellectual Property Infringement Reports. In others, Temu inaccurately states that "Temu is a passive e-commerce platform and as such we are not actively involved in the listing or sale of any products" as shown below.  Further, Temu demanded that Wild Man provide "a court order requiring the removal of product(s) you allege violate your utility patent rights."  Below is an example response from Temu on August 21, 2023:

**Example Temu Response to Infringement Notice**

--------- Forwarded message ---------
From: **ipprotection@temu.com** <ipprotection@temu.com>
Date: Mon, Aug 21, 2023 at 2:03 PM
Subject: Re: Email_Replica - Wild Man Drinking Company ENF-1474946
To: <enforcement@wildmandrinking.com>

To Whom it May Concern:
Temu is a passive e-commerce platform and as such we are not actively involved in the listing or sale of any products. Please provide a court order requiring the removal of product(s) you allege violate your utility patent rights.
Sincerely,
Temu IP Protection Team

68.    Temu Krak'in Knockoffs continued to be offered for sale, sold, and imported despite Wild Man's efforts to have Temu respect Wild Man's patent rights.

69.    Because Temu chose to willfully disregard Wild Man's intellectually property rights, Wild Man was forced to file this case.

**Temu's Unauthorized Use of Wild Man's Trademarks**

70.    Despite Wild Man's rights in the Wild Man Marks, and without Wild Man's authorization, Temu has been using marks very similar to or identical to the Wild Man Marks to advertise, promote, offer for sale,  and distribute Krak'in Knockoffs that compete with Wild Man's THE KRAK'IN® products.  Temu has used the marks "Krak In," "krakin," "kraken," "The Krak'in," "Krak'in" and "Wild Man Drinking Company," which are together referred to as "Temu's Marks." Temu has used the Temu Marks on the Temu Platforms and through sponsored advertising on Google to promote sales of Krak'in Knockoffs.

71.    An example of Temu using "Kraken" is shown below where Temu advertised a Krak'in Knockoff for sale as an "innovative Shotgun Tool with Built, Beer Shotgun Tool, Kraken Shotgun Tool, Beer Can Shotgun Opener, Keychain Design, Beer Can Shotgun Opener."  The example below is a November 6, 2023 screenshot from the temu.com website.

**Annotated Example of Temu's use of "Kraken"**



72.     Below is an example of Temu using the "Krak'in" mark in a Temu sponsored advertisement in a confusingly similar way to Wild Man's THE KRAK'IN® mark to sell a Krak'in Knockoff for shotgunning a beverage.   The example below was downloaded from the website https://www.tiktok.com/@seehall/video/7266893541962517803 on January 17, 2024.    In this example, a TikTok user posted a copy of a Temu Platform advertisement that uses the marks "The Krak In" and "Krak'in" to promote the sale of Krak'in Knockoffs.   On information and belief, Temu used "The Krak In" and "Krak'in" marks after Wild Man registered THE KRAKIN® trademark.

**Example of Temu's use of "The Krak'in"**



73.    Temu pays for sponsored advertisements for Krak'in Knockoffs by using marks that are substantially similar to and confusing to THE KRAK'IN® mark.  Below is an example of Temu using the "Krak In" mark on September 8, 2023 in a Temu sponsored advertisement in a confusingly similar way to Wild Man's THE KRAK'IN® mark to sell a Krak'in Knockoff for shotgunning beverages that was obtained using the search "krak'in shotgunning tool."  Temu paid for the sponsored advertisement below.

**Temu's use of "Krak In" Mark**



74.    Below is another example of Temu using the "Krak In" mark on September 8, 2023 in a Temu sponsored advertisement, that Temu paid for, in a confusingly similar way to Wild Man's THE KRAK'IN® mark to advertise and sell a Krak'in Knockoff for shotgunning a beverage.

**Temu use of "Krak In" Mark**



75.     Below is another example of Temu using the "Krakin" mark on November 10, 2023 in a Temu sponsored advertisement, that Temu paid for, in a confusingly similar way to Wild Man's THE KRAK'IN® mark to advertise and sell a Krak'in Knockoff for shotgunning beer in response to the search "krakin shotgunning tool."

**Temu use of "Krakin" Mark**



76.    Temu conducts direct-to-consumer advertisements for Krak'in Knockoffs by using marks that are substantially similar and confusing to the THE KRAK'IN® mark.  Below is an example of Temu using the "Krak'in" mark in direct-to-consumer email offers for a Krak'in Knockoff, which is confusingly similar to Wild Man's THE KRAK'IN® mark.  This example is from August 18, 2023 prior to Wild Man registering THE KRAK'IN® mark on September 5, 2023.  This advertisement was sent from a Temu email account.  On information and belief, Temu has sent direct-to-consumer advertisements for Krak'in Knockoffs by using marks that are the substantially similar and confusing to THE KRAK'IN® mark after September 5, 2023.

**Example of Temu's Confusing Use of THE KRAK'IN® Mark**



77.     On information and belief, Temu advertises Krak'in Knockoffs by using marks that are substantially similar to and confusing to the WILD MAN DRINKING COMPANY® trademark, which was registered with the USPTO on August 15, 2023.  Below is an example from July 24, 2023 of Temu using the WILD MAN DRINKING COMPANY® trademark where Temu copied and published Wild Man marketing literature.  On information and belief, Temu used this same image having the WILD MAN DRINKING COMPANY® trademark after Wild Man registered the WILD MAN DRINKING COMPANY® mark with the USPTO on August 15, 2023.  For example, Temu used the same image on its website on November 10, 2023 (*see infra* ¶ 86).

**Example of Temu's use of the WILD MAN DRINKING COMPANY® Trademark**



78.     Temu has been engaged in the unauthorized promotion of beverageware/beverage drinking devices (*i.e.,* Krak'in Knockoffs) for sale on the Temu Platforms using marks that are identical to, confusingly similar, or counterfeits to the Wild Man Marks.  Temu's use of marks that are identical to, confusingly similar to, or counterfeits to the Wild Man Marks on the Temu Platforms and in sponsored advertising has caused confusion and/or is likely to lead, consumers to believe that

Temu's Krak'in Knockoffs are authorized by or otherwise affiliated with, associated with, or approved by Wild Man.

79.     Temu's use of identical or confusingly similar marks to the Wild Man Marks has caused and is likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of Temu's Krak'in Knockoffs and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Temu's Krak'in Knockoffs originate from, are associated or affiliated with, or otherwise authorized by Wild Man.

80.     Confusion is shown below in the screenshot taken on January 10, 2024 from an August 18, 2023 post where a poster stated: "Get the kraken on temu for $5 and only wait 5 days for delivery."

**Example of Confusion**



81.     Another example of confusion is shown in an excerpt from a July 24, 2023 email from a consumer to Wild Man's email account as shown below stating "Krakin on temu."

**Example of Confusion**



82.    Another example of confusion is shown in an excerpt from comments on a social influencer's account at (https://www.tiktok.com/@crackingcans_jonnysips) stating "2 dollars on Temu for a KRAKEN same brand dude."

**Example of Confusion**



83.     On September 27, 2023, Wild Man sent a letter to Temu notifying Temu of its infringing use of the WILD MAN DRINKING COMPANY® trademark.

84.     On information and belief, Temu has been aware of Wild Man's rights in THE KRAK'IN® trademark.

85.     Temu's acts are causing and, unless restrained, will continue to cause damage and irreparable harm to Wild Man and to its valuable reputation and goodwill with the consuming public for which Wild Man has no adequate remedy at law.

**Temu's Copyright Infringement**

86.     Without authorization, Temu copied and republished Wild Man's copyrighted works

publicly in connection with Temu's commercial business of advertising and promoting Krak'in

Knockoffs (Registration No. VA 2-369-440) (Ex. E).  For example, pictured below are side-by-

side comparisons of Wild Man's copyrighted works and those used by Temu for advertising

Krak'in Knockoffs on temu.com on November 10, 2023:

| **Wild Man's Copyrighted Works** | **Temu's Publication of Wild Man's Copyrighted Works**[1] |
|:---:|:---:|
|  |  |

---

[1] Images were downloaded from
https://www.temu.com/goods.html?_bg_fs=1&goods_id=601099523218278&_x_msgid=211-20231004-19-B-651745679125483520-427-xWocXcI6&_x_src=mail&refer_page_name=bgt_order_detail&refer_page_id=10045_169903579 6710_szb3tkmr07&refer_page_sn=10045&_x_sessn_id=in6si29hcj on Nov. 10, 2023.









 

87.    Mr. Widmann is the individual pictured in the last comparison above wearing Wild Man Drinking Company branded attire in the snow.   Likewise, the individuals in other pictures include Mr. Widmann, his brother, and some of his closest friends.

88.    As another example, Temu sent the below email on November 13, 2023 from email@market.temuemail.com with a copy of Wild Man's copyrighted work.

**November 13, 2023 Email from Temu**



**Temu's Business Partners**

89.     Temu Krak'in Knockoffs have been offered for sale and sold through Temu's Platforms.

90.     Temu has contracted with and contracts with foreign suppliers to supply Krak'in Knockoffs ("Foreign Suppliers") (*see supra* ¶ 71, Ex. P).  Examples of Temu's Foreign Suppliers are jmite, Rzs Kitchen Daily Necessities, Shmily, and Bingo.

91.     Temu has contracted with and contracts with the Foreign Suppliers for the Foreign Suppliers to supply Krak'in Knockoffs that were and are offered for sale, sold, and advertised on the Temu Platforms and distributed and imported into the United States in response to sales made through the Temu Platforms (*see supra* ¶ 71, Ex. P).

92.     Temu has accepted and accepts orders for Krak'in Knockoffs and payments for such orders placed on the Temu Platforms (*see* Exs. F-J, P).

93.     Temu has sent and sends receipts to purchasers of Krak'in Knockoffs for sales made through the Temu Platforms (*see* Exs. F-J, P).

94.     Temu has accepted and accepts returns for purchases for Krak'in Knockoffs made through the Temu Platforms and provides credit for returns of Krak'in Knockoffs purchased through the Temu Platforms.

95.     Temu coordinates the distribution of Krak'in Knockoffs purchased through the Temu Platforms (*see* Exs. F-J, P).

96.     Temu has had the authority to advertise Krak'in Knockoffs, accept orders for Krak'in Knockoffs, send receipts for purchases of Krak'in Knockoffs, accept payments for Krak'in Knockoffs, agree to a sale of a Krak'in Knock off when an order is placed through a Temu Platform, accepts returns of Krak'in Knockoffs, provide discounts and reduced or free shipping for Krak'in Knockoffs, provide money or credit in exchange for a return of a Krak'in Knockoff,

and coordinate shipping, distribution, importation, and delivery of purchased Krak'in Knockoffs (*see* Exs. F-J, P).

97.    Temu has provided offers for sale for Krak'in Knockoffs through the Temu Platforms that include prices, product pictures, and product descriptions (*see supra* ¶¶ 54-56, 71-72).

98.    To the extent that Temu has not offered for sale and sold Krak'in Knockoffs in the United States on Temu's Platforms, Temu's Foreign Suppliers have offered for sale Krak'in Knockoffs in the United States on Temu's Platforms and sold Krak'in Knockoffs in the United States in response to orders processed through the Temu Platforms (*see supra* ¶ 71, Ex. P).

99.    Temu has imported Krak'in Knockoffs in response to orders placed on the Temu Platforms (*see* Exs. F-J, P).

100.    To the extent that Temu denies that Temu imported Krak'in Knockoffs into the United States, Temu has entered into contracts with third-parties to import Krak'in Knockoffs into the United States in response to orders for Krak'in Knockoffs placed on the Temu Platforms (*see* Exs. F-J, P).

**Damages and Harm Sustained by Wild Man**

101.    Temu's patent infringement has irreparably harmed Wild Man because Wild Man lost sales and suffered lost profits due to Temu offering for sale, importing, and inducing others to directly infringe by providing a Krak'in Knockoff at much cheaper prices on the Temu Platforms.  As Wild Man has not licensed its intellectual property for use by others, Temu's infringement has caused Wild Man to lose sales.

102.    Wild Man has also suffered damages to its good will, reputation, and confusion in the marketplace due to Temu's patent infringement and consumers wrongly associating Temu with Wild Man's invention.

103.    Wild Man has also suffered monetary damages and lost profits due to Temu's improper use of Wild Man's registered trademarks.  Temu has caused confusion as to the origin of the Temu Krak'in Knockoffs.

104.    For example, below is a screenshot taken on January 3, 2024 from a social media user that posted on the website https://www.tiktok.com/@mothertucker77/video/7266236782214352174 "bought this knock off krakn off Temu"

**Example of Wild Man Lost Sales**



105.    For example, below is screenshot taken on December 16, 2023, where a social media user previously posted on TikTok "Let me give you guys a little bit of advice. You see this Krak'in. This extreme shotgunning tool right.  Oh, and they say you can't get it any cheaper than this. Just go to Temu." (Whats #kraken ? @Temu is!! Get the Kraken, the ultimate Shotgun'n tool... | TikTok).

**Example of Wild Man Lost Sales & Confusion**



106.    Below is an example of a January 3, 2024 social media Tik Tok user stating "$5 on Temu"

(https://www.tiktok.com/@dannytodd/video/726465797892006186).

## Example of Wild Man Lost Sales



## Count I
### Temu's Direct infringement of the '663 Patent (35 U.S.C. § 271(a))

107.    Wild Man repeats and realleges the allegations contained in ¶¶ 1-106 as though fully set forth herein.

108.    Wild Man has the right to bring this action against Temu for infringement of the '663 Patent and to collect damages for past infringement.

109.    The '663 Patent is entitled "Beverage Drinking Apparatus" and was duly and lawfully issued by the USPTO on December 6, 2022.

110.    The Representative Temu Knockoff is covered by at least claims 1 and 6 of the '663 Patent as shown in the claim chart attached as Exhibit K and has all the limitations of at least claims 1 and 6 of the '663 Patent.

111.    Upon information and belief, Temu directly infringed at least claims 1 and 6 of the '663 Patent under 35 U.S.C. § 271(a) at least by importing Krak'in Knockoffs including the Representative Temu Knockoff into the United States.  For example, Temu represents on its website that Temu is the importer.  Temu represents that "Temu ships its products" that are sold through the Temu Platforms (Ex. O).  Temu further provides "Temu Shipping Info" for orders on Temu (Ex. N).  Temu also represents that Temu's "unique strengths" include "[e]xperience in managing complex logistical supply chains," which on information and belief, includes importing (Ex. M).  Temu additionally represents that "Temu works with leading package carriers like UPS, FedEx, and USPS to ensure that all orders are delivered promptly and securely to customers," thereby indicating that Temu imports Krak'in Knockoffs through these package carriers (Ex. M).

**Excerpt from Temu "About Temu" Website Page (Ex. M)**

### Where does Temu ship from?

Temu ships its products from a global network of suppliers and manufacturers, using experienced and reliable logistics partners. Temu's shipping origins can vary depending on the product being purchased. However, Temu works with leading package carriers like UPS, FedEx, and USPS to ensure that all orders are delivered promptly and securely to customers.

112.   In addition, Temu represents that the products offered for sale on the Temu Platforms are "Temu" products.  For example, Temu represents that Temu is a marketplace that "offers a wide selection of merchandise to consumers at close to wholesale prices" (Ex. O).  Temu also has a section on the Temu website entitled "Where Temu sources its products" (Ex. O).  Temu's reference to "its products" is a representation by Temu that Temu considers the products sold through Temu Platforms to be Temu products (Ex. O).

**Excerpt from "Where Does Temu Ship From" Website (Ex. O)**

## Where Does Temu Ship From

Temu is a Boston-based online marketplace that offers a wide selection of merchandise to consumers at close to wholesale prices. Temu connects consumers to millions of sellers, manufacturers, and brands from all over the world, and is a popular choice among consumers seeking the best value for their money.

In this article, we will explore the following topics to help you understand why Temu is a safe, reliable, and trustworthy shopping site:

- Where Temu sources its products
- Where does Temu ship from
- How to order from Temu
- Tracking your order with Temu
- Temu's returns and refunds policy
- How to contact Temu for help with your order

113.   Temu represented that Temu was shipping (*e.g.*, importing) the Representative Temu Knockoff by stating in Temu's issued order confirmation that: "We're getting your order ready for shipping" and "we will notify you when it is shipped" (Ex. F):

48

**Except from Temu Order Confirmed (Ex. F)**



In addition, the DHL packaging for the Representative Temu Knockoff (Ex. J) states that the Representative Temu Knockoff was sent from the "Yucan fulfillment service for Temu" in China to Philadelphia, Pennsylvania (Ex. J), thereby stating that the Representative Temu Knockoff was imported by Temu.  The packaging for the Representative Temu Knockoff is Temu branded packaging (Ex. J).

**Packaging Provided by Temu for Representative Temu Knockoff (Ex. J)**



114.    The tracking information for the Representative Temu Knockoff (below) (Ex. G) shows that the Representative Temu Knockoff was imported into the United States from China as shown below.  Upon information and belief, Temu did the importing.  In accordance with Temu's website, where Temu touts that Temu uses carriers similar to DHL, DHL Express was used to transport the Representative Temu Knockoff.

**DHL Tracking Order for Representative Temu Knockoff (Ex. G)**



115.    In addition, in the example below, which is a November 6, 2023 screenshot from the temu.com website, Temu represents that a Krak'in Knockoff "Ships from Temu" (*e.g.*, imported by Temu).

**Temu's Statement that a Kraken Knockoff "Ships from Temu"**



116.    Alternatively, to the extent that Temu denies that Temu imported Krak'in Knockoffs into

the United States, Temu is vicariously liable for the acts of importing Krak'in Knockoffs into the United States. To the extent that Temu denies that Temu imported, others committed the infringing acts of importing Krak'in Knockoffs under 35 U.S.C. § 271 and Temu is vicariously liable because those third-parties acted as Temu's importation agent. To the extent that Temu denies that Temu imported Krak'in Knockoffs, Temu contracts for and has the right to direct and control the importation of Krak'in Knockoffs sold through the Temu Platforms, such that Temu should be consider the importer. On information and belief, any third-party importers benefit from importing by being paid for importing and being a large-scale Temu distributor. On information and belief, Temu conditioned the benefits of a third-party importer being paid for importing and being a Temu distributor, upon the performance of any such importer importing Krak'in Knockoffs in response to instructions from Temu. Further, on information and belief, Temu conditioned any such importers participation in distributing Krak'in Knockoffs on those third-parties importing the Krak'in Knockoffs. Temu receives substantial benefit in response to any importation of Krak'in Knockoffs by third-parties including being paid in connection with the sale of Krak'in Knockoffs. Further, on information and belief, to the extent that Temu denies that Temu imports, Temu controls the manner or timing of the importer performing the importation pursuant to contracts with any third-party importers based on Temu's contractual relationships with its supply-chain that connects foreign manufacturers to consumers in the United States. On information and belief, any third-party importers are not acting at arms-length from Temu, but rather they work at Temu's direction and control.

117.    To the extent that Temu denies that Temu committed infringing acts, others committed the infringing acts of importing Krak'in Knockoffs under 35 U.S.C. § 271 and Temu is vicariously liable because Temu represents on its website that: (i) "Temu ships its products" (Ex. O) that are

sold through the Temu Platforms; (ii) Temu's "unique strengths" include "[e]xperience in managing complex logistical supply chains;" (Ex. M) and (iii) "Temu works with leading package carriers like UPS, FedEx, and USPS to ensure that all orders are delivered promptly and securely to customers" (Ex. M). Temu further provides "Temu Shipping Info." for orders on Temu's website (Ex. N). Thus, Temu represents to consumers that Temu manages and provides importation of Krak'in Knockoffs and directs and controls any third-party importers and is therefore vicariously liable for any importer's actions of importing Krak'in Knockoffs into the United States.

118.    To the extent that Temu denies that Temu imported Krak'in Knockoffs, Temu is vicariously liable for others importing Krak'in Knockoffs sold on Temu Platforms because Temu accepts orders and payments for Krak'in Knockoffs sold through the Temu Platforms and coordinates, directs, and controls the importation of the Krak'in Knockoffs in response to accepting orders for Krak'in Knockoffs, as shown with respect to the Representative Temu Knockoff (Exs. F-I, P). On information and belief, to the extent that Temu denies that Temu imported Krak'in Knockoffs, Temu coordinated and controlled the importation of Krak'in Knockoffs, as shown with respect to the Representative Temu Knockoff (Exs. F-I, P), by sending instructions to third-parties, who are contractually obligated to act at Temu's direction, to import Krak'in Knockoffs in response to orders accepted by Temu on the Temu Platforms (Exs. F-I, P). Any such importers receive the benefit of being paid for the importing and being a Temu distributor, which provides a large volume of business.

119.    Wild Man has complied with the patent marking statute 35 U.S.C. § 287 by having a patents button on the bottom of every Wild Man webpage and having a patents page stating that "The Krak'in is patent protected by US Patent No. 11,518,663 and U.S Patent No. 11,731,868" under

the heading "THE KRAK'IN PATENT." (https://wildmandrinking.com/pages/the-krakin-patent).

In addition, Wild Man marks the Krak'in packaging with "patented protected." Further, Wild Man

provided Temu with actual notice of infringement of the '663 Patent through the Red Points and

attorney correspondence to Temu.

120.   Temu's infringing activities have caused Wild Man to suffer damages in an amount to be

determined at trial. Wild Man has suffered lost profits due to Temu's infringement. To the extent

that Wild Man has not suffered lost profits due to any of Temu's infringement, Wild Man is entitled

to damages in the form of a reasonable royalty.

121.   Temu's infringing acts will continue unless enjoined by this Court. Temu and those acting

in concert with Temu should be preliminarily and permanently enjoined from infringing. For

example, Wild Man has lost sales, lost market share, and has had to directly compete with Temu

for sales of Wild Man's own patented product. Wild Man will suffer price erosion if the

infringement continues, and Wild Man has suffered reputational harm, loss of goodwill, and

customer confusion. As shown below, people responded to influencers promoting the Wild Man's

THE KRAK'IN® by stating that people should buy it cheaper on Temu. As a result of this

diversion, influencers became less interested in promoting the Wild Man Krak'in, which in turn

decreases Wild Man's sales. The balance of hardships injunction factor favors an injunction

because Temu sells many products, while the Krak'in is Wild Man's core product.

**Example Showing Lost Sales**



122.    Temu's infringing acts have irreparably harmed Wild Man and that irreparable harm will continue unless Temu is enjoined by this Court.  Wild Man has no adequate remedy at law against Temu's acts of infringement.

123.    Temu's infringement has been and is willful.  Temu Krak'in Knockoffs are copies of Wild Man's patented technology and Wild Man's marketing literature.  Temu has continued to infringe even after being provided notice of infringement pursuant to Temu's own intellectual property policy.  Moreover, in complete disregard of Wild Man's patent rights, Temu flippantly told Wild Man to go get a Court Order if Wild Man wants Temu to stop infringing.

124.    This case is exceptional and, therefore, Wild Man is entitled to an award of attorney fees

pursuant to 35 U.S.C. § 285 and treble damages.

<u>**Count II**</u>
**Direct Infringement of the '868 Patent (35 U.S.C. § 271(a))**

125.    Wild Man repeats and realleges the allegations contained in ¶¶1-124 as though fully set forth herein.

126.    Wild Man has the rights to bring this action against Temu for infringement of the '868 Patent and to collect past damages.

127.    The '868 Patent, entitled "Beverage drinking apparatus" was duly and lawfully issued by the USPTO on August 22, 2023.

128.    Upon information and belief, Temu has directly infringed under 35 U.S.C. § 271(a) the '868 Patent by at least, without authority, importing Krak'in Knockoffs into the United States that embody at least claims 1 and 6 of the '868 Patent as explained in Count I for acts occurring on and after August 22, 2023.

129.    The Representative Temu Knockoff is covered by at least claims 1 and 6 of the '868 Patent as shown in the claim chart attached as Exhibit L and has all the limitations of at least claims 1 and 6 of the '868 Patent.

130.    Wild Man has complied with the patent marking statute 35 U.S.C. § 287 by having a patents button on the bottom of every Wild Man webpage and having a patents page stating that "The Krak'in is patent protected by U.S. Patent No. 11,518,663 and U.S Patent No. 11,731,868" under the heading "THE KRAK'IN PATENT." (https://wildmandrinking.com/pages/the-krakin-patent). On information and belief had actual knowledge of the '868 Patent and its relevance to the Krak'in Knockoffs based on the actual notice regarding the '663 Patent and Wild Man's patent notice on its website.  Alternatively, Temu should have known and was willfully blind to the '868 Patent prior to this case being filed.

131.    Temu's infringing activities have caused Wild Man to suffer damages in an amount to be

determined at trial.  Wild Man has suffered lost sales and lost profits due to Temu's infringement.
To the extent that Wild Man has not suffered lost profits due to Temu's infringement, Wild Man
is entitled to damages in the form of a reasonable royalty.

132.    Temu's infringing acts will continue unless enjoined by this Court.  Temu and those acting
in concert with Temu should be preliminarily and permanently enjoined from infringing for the
reasons explained above with respect to the '663 Patent.

133.    Temu's infringing acts have irreparably harmed and that irreparable harm will continue
unless Temu is enjoined by this Court for the reasons explained above with respect to the '663
Patent.  Wild Man has no adequate remedy at law against Temu's acts of infringement.

134.    Temu has actual knowledge of the '868 Patent since at least the filing of this Complaint.
Temu's infringement has been willful at least since the filing of this Complaint.  Temu's Krak'in
Knockoffs are a copy of the technology claimed in the '868 Patent.

135.    This case is exceptional and, therefore, Wild Man is entitled to an award of attorney fees
pursuant to 35 U.S.C. § 285 and treble damages.

## Count III
### Inducing Infringement of the '663 Patent (35 U.S.C. § 271(b))

136.    Wild Man repeats and realleges the allegations contained in ¶¶1-135 as though fully set forth herein.

137.    Wild Man has the rights to bring this action against Temu for infringement of the '663 Patent.

138.    The '663 Patent, entitled "Beverage Drinking Apparatus" was duly and lawfully issued by the USPTO on December 6, 2022.

139.    Upon information and belief, Temu indirectly infringed at least claims 1 and 6 of the '663 Patent within the United States under 35 U.S.C. § 271(b) by inducing customers that purchased Krak'in Knockoffs to use the Krak'in Knockoffs in a manner that directly infringes at least claims 1 and 6 of the '663 Patent.   Because there are no known noninfringing uses of the Krak'in Knockoffs and an estimated over 100,000 units were sold through Temu, a large majority of the Krak'in Knockoffs were "used" in an infringing way under 35 U.S.C. § 271(a).  For example, the video    at    the    website    https://www.tiktok.com/@dannytodd/video/7264657987892006186 downloaded on January 3, 2024 shows an infringing use of a Krak'in Knockoff and screenshots of that use are shown below.

**Infringing use of a Krak'in Knockoff**






140.    To the extent that Temu claims that Temu does not import, sell, and or offer for sale Temu Krak'in Knockoffs, Temu indirectly infringed at least claims 1 and 6 of the '663 Patent within the United States under 35 U.S.C. § 271(b) by inducing third-parties to offer for sale, sell, and import Krak'in Knockoffs and thereby directly infringe at least claims 1 and 6 of the '663 Patent.  Krak'in Knockoffs were offered for sale and sold through the Temu Platforms and imported into the United States in response to orders accepted by Temu through the Temu Platforms, all of which constituted acts of direct infringement under 35 U.S.C. § 271(a).  For example, the Representative Temu Knockoff was offered for sale on a Temu Platform, sold through a Temu Platform, and imported in response to an order placed on the Temu Platform (Exs. F-I, P)

141.    Temu has had actual knowledge of the '663 Patent and its infringement since at least as early as August 2023 (*see supra* ¶¶ 64-69).  Based on the notices provided to Temu, Temu knew about the '663 Patent and its relevance to the infringing acts with the Temu Krak'in Knockoffs and Temu continued with its acts of inducement. Temu acted with the intent to infringe as Temu had knowledge of its infringement and proceeded to actively induce as described herein.

142.    Temu's active inducement included acting with knowledge of the '663 Patent and its relevance to the Krak'in Knockoffs and providing advertisements explaining how to use the Krak'in Knockoffs in a manner that infringes at least claims 1 and 6 of the '663 Patent.  Because the product is self-explanatory, Temu's publication of pictures and descriptions of the Krak'in Knockoffs are instructions for use that promote a user to use a Krak'in Knockoff in an infringing way.   Moreover, the screenshots below on the right were taken from a Temu Platform on about November 10, 2023 and are copies of Wild Man's marketing literature (shown on the left) instructing and advertising how to use a Krak'in Knockoff in an infringing way.

| **Wild Man's Copyrighted Works** | **Temu's Publication of Wild Man's <u>Copyrighted Works</u>** |
|---|---|
|  |  |
|  |  |







Similarly, on November 13, 2023, Temu sent an email instructing how to use a Krak'in Knockoff in an infringing way as shown below.

**Temu Advertisement from November 13, 2023**



Moreover, in the screenshot below on the left taken on December 15, 2023 from Google Images, Temu advertises and instructs how to use a Krak'in Knockoff in an infringing way. Temu copied this image from Wild Man's marketing literature show on the left below. Temu copied Wild Man's website (https://wildmandrinking.com/products/the-krakin?variant=43049335062686).

**Wild Man Website**

**Temu Advertisement**





Further, in the screenshot below on the left taken on December 15, 2023 from Google Images, Temu advertises and instructs how to use a Krak'in Knockoff in an infringing way.  Temu copied this image from Wild Man's marketing literature show on the left below.  Temu copied Wild Man's website (https://wildmandrinking.com/products/the-krakin?variant=43049335062686).

**Wild Man Website**   **Temu Advertisement**

 

143. To the extent that Temu has not directly infringed by offering for sale, sale, and importation, Temu has induced third-parties to directly infringe by offering for sale, selling, and importing by contracting with third-parties to offer for sale, sell, and import Krak'in Knockoffs (*see supra* ¶¶ 89-100). Despite knowing about the '633 Patent and its relevance to the Krak'in Knockoffs, Temu actively encouraged offers for sales and sales by contracting with third-parties for listing the Krak'in Knockoffs on the Temu Platforms, accepting and posting advertisements to sell Krak'in Knockoffs on Temu Platforms, providing services for accepting orders and payments for Krak'in Knockoffs, processing payments for Krak'in Knockoffs, sending receipts for Krak'in Knockoffs, and coordinating distribution of Krak'in Knockoffs.

144. On information and belief, Temu had the right to control pricing and offer promotions for sales of Krak'in Knockoffs and exercised those rights to promote and actively induce offers for sales, sales, and importation of Krak'in Knockoffs. Temu actively induced by offering promotional (*e.g.*, "lightning," "Black Friday") discounts on Krak'in Knockoffs, offering free

shipping on Krak'in Knockoffs on the Temu platforms, and sending direct-to-consumer advertisements as shown above (*see supra* ¶¶ 54-55, 71-72, 76).  For example, Temu offered "Black Friday" discounts, "free shipping," "lightning deals" and adjusted pricing as shown below (which are copies/excerpts of documents previously referenced herein).  In the direct-to-consumer advertisements below, Temu lowered the price from $15.49 to $4.49.  Further, Temu promoted Krak'in Knockoff sales by touting the products as "#3 Best Seller in this Shop."  Temu further promoted sales by denoting the products as "Almost sold out" and "Hot New Release."  Temu also promoted the Krak'in Knockoffs as "highly rated" and "getting popular" in its emails.  Temu actively induced by encouraging sales, offers for sale, and importation by identifying how many units have been sold and how many units remain.  By doing this, Temu encouraged the offers for sale, sale, and importation by creating fear that a consumer may miss out, if the consumer does not purchase a Krak'in Knockoff.

## **Temu Adjusting Pricing**

 




145.    Temu has further inducted infringement by sending direct-to-consumer emails soliciting

Temu users to buy the Krak'in Knockoffs and inducing others – to the extent Temu denies that

Temu sells – to commit the infringing acts of offer for sale and sale and to cause importation.

Below is a representative email that Mr. Widmann received from Temu urging Mr. Widmann to

buy Krak'in Knockoffs from temu.com.  Temu sent the email from email@market.temuemail.com.

**Temu's Soliciting Users to buy Krak'in Knockoffs**



146.    To the extent that Temu has not directly infringed by importing, Temu has induced third-parties to directly infringe by contracting with third-parties to import the purchased Krak'in Knockoffs, instructing them to import the purchased Krak'in Knockoffs, and coordinating the shipping of the Krak'in Knockoffs (Exs. F-I, P).

147.    To the extent that Temu has not directly infringed, Temu has induced third-parties to directly infringe by offering for sale, selling, and importing through paid advertisements with at least Google.  The process for purchasing Google advertisements includes an entity bidding on terms for their advertisements to be associated with.  If the entity "wins" the bid for that term, Google associates the term with the entity.  When a Google user searches or otherwise includes the term, the entity's advertisements appear in the Google search results as a sponsored advertisement.  On information and belief, Temu paid for advertisements for Krak'in Knockoffs to appear when a user's search includes at least one of the terms "Krak'in," "shotgun," "tool," and/or any combination or permutation of those terms.  As shown below, Temu's paid Google

advertisement uses the "headline" "Krakin Shotgun Tool on Sale," and advertises "Up to 99% off." Thus, Temu was promoting the sale of and offering for sale Krak'in Knockoffs through the Temu Platforms with paid advertisements.

**<u>Temu Purchased Advertisement from Google</u>**



148.    As shown below, Temu's paid Google advertisement uses the "headline" "Krak In Shotgun Tool on Huge Sales – Pricing Starting at $0.99." Thus, Temu was promoting the sale of and offering for sale Krak'in Knockoffs through the Temu Platforms with paid advertisements.

## **Temu Purchased Advertisement from Google**



149.    As shown below, Temu's paid Google advertisement uses the "headline" "Up to 99% off - Krak In Shotgun Tool on Sale."  Thus, Temu was promoting the sale of and offering for sale Krak'in Knockoffs through the Temu Platforms with paid advertisements.

**Temu Purchased Advertisement from Google**



150.    Wild Man has complied with the patent marking statute 35 U.S.C. § 287 as described in Count I.

151.    Temu's infringing activities have caused Wild Man to suffer damages as described in Count I.

152.    Temu's infringing acts should be preliminarily and permanently enjoined as described in Count I.

153.    Temu's infringement has been willful, and this case is exceptional as described in Count I. Wild Man should be awarded enhanced damages and Wild Man's attorneys' fees as described in Count I.

<u>**Count IV**</u>
**Induced Infringement of the '868 Patent (35 U.S.C. § 271(b))**

154.    Wild Man repeats and realleges the allegations contained in ¶¶1-153 as though fully set forth herein.

155.    Wild Man has the rights to bring this action against Temu for infringement of the '868 Patent.

156.    The '868 Patent, entitled "Beverage Drinking Apparatus" was duly and lawfully issued by the USPTO on August 22, 2023.

157.    Temu has had actual knowledge of the '868 Patent and its infringement since at least as early as the filing of this Complaint and on information and belief had actual knowledge of the '868 Patent and its relevance to the Krak'in Knockoffs based on the actual notice regarding the '663 Patent and Wild Man's patent notice on its website. Alternatively, Temu should have known and was willfully blind to the '868 Patent prior to this case being filed.

158.    Upon information and belief, Temu indirectly infringed at least claims 1 and 6 of the '868 Patent within the United States under 35 U.S.C. § 271(b) by inducing customers that purchased Krak'in Knockoffs to use the Krak'in Knockoffs in a manner that directly infringes at least claims 1 and 6 of the '868 Patent for the reasons explained with reference to the '663 Patent in Count III.

159.    To the extent that Temu claims that Temu does not import, sell, and or offer for sale Temu Krak'in knockoffs, Temu has indirectly infringed at least claims 1 and 6 of the '868 Patent within the United States under 35 U.S.C. § 271(b) by inducing third-parties to offer for sale, sell, and import Krak'in knockoffs and thereby directly infringe at least claim 1 of the '868 Patent for the reasons explained above with respect to the '663 Patent and Count III for acts occurring after issuance of the '868 Patent.

160.    Wild Man has complied with the patent marking statute 35 U.S.C. § 287 as described in

Count II.

161.    Temu's infringing activities have caused Wild Man to suffer damages as described in Count II.

162.    Temu's infringing acts should be preliminarily and permanently enjoined as described in Count II.

163.    Temu's infringement has been willful, and this case is exceptional as described in Count II.  Wild Man should be awarded enhanced damages and Wild Man's attorneys' fees as described in Count II.

**Count V**
**Federal Trademark Infringement and Trademark Counterfeiting**
**Under Section 32(1) of the Lanham Act**
**(15 U.S.C. §1114(1))**

164.   Wild Man repeats and realleges the allegations contained in ¶¶ 1-163 as though fully set forth herein.

165.   Section 1114(1)(a) of Title 15 of the United States Code states, in pertinent part:

Any person who shall, without the consent of the registrant –

(a) use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive…shall be liable in a civil action…

166.   Wild Man owns valid and active Trademark Registration No. 7,154,135 from the USPTO for THE KRAK'IN® trademark for "Beverageware in the nature of a drinking device attachable to a beer can through which the beverage may be consumed; Beverage drinking apparatus in the nature of an opener attachment with a pressurized seal and a drinking spout" (Ex. D).

167.   As a mark registered on the Principal Register of the USPTO, Wild Man's THE KRAK'IN® trademark is presumed to be valid and distinctive under the Lanham Act, and Wild Man is presumed to be the exclusive owner of the mark.

168.   Temu's use of the Temu Marks that are the same as and/or confusingly similar to THE KRAK'IN® in connection with its business including on the Temu Platforms and in Temu paid advertising in connection with competing goods is confusingly similar to Wild Man's use of THE KRAK'IN®.  Wild Man uses of THE KRAK'IN® in connection with the sale of Wild Man's beverage drinking devices.  Temu uses the Temu Marks, which are the same or similar to THE KRAK'IN®, in connection with promoting the sale of and selling Krak'in Knockoffs.  Temu's use has caused confusion and is likely to cause confusion, mistake and deception among the public

and users of Wild Man's and Temu's goods and services.

169.    Wild Man has not consented, either directly or indirectly, to Temu's use of THE KRAK'IN® mark.

170.    Wild Man and Temu's goods and services for the shotgunning devices are related, as they are offered for sale, sold, advertised, and distributed in the same trade channels and purchasers for such products are in the same class.  The same classes and types of people purchase the products offered in connection with the mark at issue.  For example, both Wild Man and Temu offer for sale and advertise their shotgunning devices to the general public in the United States through online stores, paid advertisements to companies such as Google and with direct-to-consumer advertising (*e.g.*, emails).  Both Wild Man and Temu use their marks in these same channels of trade.

171.    On information and belief, Temu knew or should have known about Temu's trademark for THE KRAK'IN®.  Temu's conduct constitutes trademark infringement in violation of 15 U.S.C. § 1114 and is being conducted with willful disregard of Wild Man's valuable trademark rights in its federally registered THE KRAK'IN® trademark.

172.    As a result of Temu's willful infringement, Wild Man has and continues to suffer damages.

173.    Wild Man seeks attorney's fees, costs, and treble damages given Temu's willful conduct.

174.    Wild Man has no adequate remedy at law.  Temu's conduct, if not enjoined, will cause irreparable harm to the rights of Wild Man in its trademarks and its business, reputation, and goodwill.  Wild Man requests that Temu be enjoined from infringing Wild Man's THE KRAK'IN® trademark.  Wild Man's irreparable harm includes confusion, damage to reputation of being associated with Temu, and loss of control over reputation of its goods. If Temu's infringement is not enjoined Wild Man will suffer irreparable harm.  The public interest in

protecting Wild Man's trademark favors an injunction.

## Count VI
## False Designation of Origin (15 U.S.C. § 1125(a))

175.    Wild Man realleges and incorporates by reference each of the allegations contained in ¶¶ 1-174 as though fully set forth herein.

176.    Section 1125(a) of Title 15 of the United States Code states, in pertinent part, that:

> Any person who, on or in connection with any good or services, … uses in commerce any word, term, name, symbol, … or any false designation of origin, … which -- is likely to cause confusion, or to cause mistake, or to deceive…as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person…shall be liable in a civil action.

177.    Temu's use of the Temu Marks that are the same as or confusingly similar to Wild Man's registered THE KRAK'IN® trademark falsely suggests that Wild Man is the source of, or is somehow affiliated with Temu's Krak'in Knockoffs, and has and is likely to deceive members of the relevant trade and public into believing that Temu's products and services are affiliated with or offered in conjunction with Wild Man, in violation of 15 U.S.C. § 1125(a).

178.    Temu's conduct constitutes false and misleading advertising, and false designation of origin in violation of 15 U.S.C. §1125(a).

179.    Temu used Temu Marks that are the same as or confusingly similar to Wild Man's registered THE KRAK'IN® trademark with willful disregard of Wild Man's valuable rights in its THE KRAK'IN® trademark.  Temu's conduct in using the Temu Marks that are the same as or confusingly similar to Wild Man's registered THE KRAK'IN® trademark is a willful attempt to trade upon the goodwill that Wild Man has developed in THE KRAK'IN® trademark.

180.    Wild Man has no adequate remedy at law.  Temu's conduct has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Wild Man in its THE KRAK'IN® trademark, reputation, and goodwill.

181.    As a result of Temu's conduct, Wild Man has and continues to suffer damages.

182.    Wild Man requests a preliminary and permanent injunction from Temu and those acting in concert with Temu from infringing Wild Man's THE KRAK'IN® trademark.  If Temu's infringement is not enjoined Wild Man will suffer irreparable harm.  The public interest in protecting Wild Man's trademark favors an injunction.

183.    Wild Man seeks attorney's fees, costs, and treble damages given Temu's willful conduct.

## Count VII
### Federal Trademark Infringement and Trademark Counterfeiting
### Under Section 32(1) of the Lanham Act
### (16 U.S.C. §1141(1))

184.    Wild Man repeats and realleges the allegations contained in ¶¶ 1-183 as though fully set forth herein.

185.    Section 1114(1)(a) of Title 15 of the United States Code states, in pertinent part:

> Any person who shall, without the consent of the registrant –

> (a) use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive…shall be liable in a civil action…

186.    Wild Man owns a valid United States federal trademark registration for the WILD MAN DRINKING COMPANY® Mark, Reg. No. 7,136,238 covering "[b]everageware in the nature of a drinking device attachable to a beverage can through which the beverage may be consumed; Beverage drinking apparatus in the nature of an opener attachment with a pressurized seal and a drinking spout" in International Class 21, registered on August 15, 2023.  The Wild Man Drinking Company® trademark consists of standard characters without claim to any particular font, style, size or color (Ex. C).

187.    As a mark registered on the Principal Register of the USPTO, Wild Man's WILD MAN DRINKING COMPANY® trademark is presumed to be valid and distinctive under the Lanham Act, and Wild Man is presumed to be the exclusive owner of the mark.

188.    Temu's uses the mark WILD MAN DRINKING COMPANY in connection with its business including on the Temu Platforms is confusingly similar to and the same as Wild Man's federally registered WILD MAN DRINKING COMPANY®  trademark and has caused confusion and is likely to cause confusion, mistake and deception among the public and users of Temu's and

Wild Man's goods and services.

189.    Temu's unauthorized use in commerce of the Counterfeit WILD MAN DRINKING COMPANY® Mark as alleged herein has deceived and/or is likely to deceive consumers as to the origin, source, sponsorship, and/or affiliation of Temu's products and services for shotgunning tools, and is likely to cause consumers to mistakenly believe that Temu's goods are offered, authorized, endorsed, or sponsored by Wild Man, or that Temu is in some way affiliated with or sponsored by Wild Man.  Temu's conduct therefore constitutes infringement and counterfeiting in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

190.    Wild Man has not consented, either directly or indirectly, to Temu's use of the WILD MAN DRINKING COMPANY mark, which is confusingly similar to Wild Man's registered WILD MAN DRINKING COMPANY® trademark.

191.    Wild Man and Temu's goods and services for the shotgunning devices are related, as are the trade channels and purchasers for such products.  The same classes and types of people will purchase the products offered in connection with the mark at issue.

192.    Temu's conduct constitutes trademark infringement in violation of 15 U.S.C. § 1114 and is being conducted with willful disregard of Wild Man's valuable trademark rights in its federally registered WILD MAN DRINKING COMPANY® trademark.

193.    Temu knew that their advertisements and use of the mark WILD MAN DRINKING COMPANY was and is causing confusion, mistake, and deception, and nevertheless continued using the WILD MAN DRINKING COMPANY® mark.

194.    As a result of Temu's infringement, Wild Man has and continues to suffer damages.

195.    Wild Man seeks attorney's fees, costs, and treble damages given Temu's willful conduct.

196.    Wild Man has no adequate remedy at law.  Temu's conduct, if not enjoined, will cause

irreparable harm to the rights of Wild Man in its trademarks and its business, reputation, and goodwill.  Wild Man requests a preliminary and permanent injunction from Temu infringing Wild Man's WILD MAN DRINKING COMPANY® trademark.  Wild Man's irreparable harm includes confusion, damage to reputation of being associated with Temu, and loss of control over reputation of its goods. If Temu's infringement is not enjoined Wild Man will suffer irreparable harm.  The public interest in protecting Wild Man's trademark favors an injunction.

**Count VIII**
**False Designation of Origin (15 U.S.C. § 1125(a))**

197.    Wild Man realleges and incorporates by reference each of the allegations contained in ¶¶

1-196 as though fully set forth herein.

198.    Section 1125(a) of Title 15 of the United States Code states, in pertinent part, that:

> Any person who, on or in connection with any good or services, … uses in
> commerce any word, term, name, symbol, … or any false designation of origin, …
> which -- is likely to cause confusion, or to cause mistake, or to deceive…as to the
> origin, sponsorship, or approval of his or her goods, services, or commercial
> activities by another person…shall be liable in a civil action.

199.    Temu's use of WILD MAN DRINKING COMPANY® trademark is confusingly similar

to Wild Man's registered WILD MAN DRINKING COMPANY® trademark and falsely suggests

that Wild Man is the source of, or is somehow affiliated with the provision of, Temu's products,

and is likely to deceive members of the relevant trade and public into believing that Temu's

products and services are affiliated with or offered in conjunction with Wild Man, in violation of

15 U.S.C. § 1125(a).

200.    Temu's conduct constitutes false and misleading advertising, and false designation of

origin in violation of 15 U.S.C. §1125(a).

201.    Temu's conduct in using the WILD MAN DRINKING COMPANY® mark is being

conducted with willful disregard of Wild Man's valuable rights in its WILD MAN DRINKING

COMPANY® trademark.  Temu's conduct in using the WILD MAN DRINKING COMPANY®

mark represents a willful attempt to trade upon the goodwill that Wild Man has developed in the

WILD MAN DRINKING COMPANY® trademark.

202.    Wild Man has no adequate remedy at law.  Temu's conduct has caused and, if not enjoined,

will continue to cause irreparable damage to the rights of Wild Man in its WILD MAN DRINKING

COMPANY® trademark, reputation, and goodwill.

203.    As a result of Temu's conduct, Wild Man has and continues to suffer damages.

204.    Wild Man requests that Temu and those acting in concert with Temu be enjoined from infringing Wild Man's WILD MAN DRINKING COMPANY® trademark. If Temu's infringement is not enjoined Wild Man will suffer irreparable harm. The public interest in protecting Wild Man's trademark favors an injunction.

205.    Wild Man seeks attorney's fees, costs, and treble damages given Temu's willful conduct.

## Count IX
### Federal Copyright Infringement

206.    Wild Man repeats and realleges the allegations contained in ¶¶ 1-205 as though fully set forth herein.

207.    Wild Man owns Federal Copyright Registration No. VA 2-369-440 (Ex. E).

208.    On information and belief, Temu has reproduced and distributed Wild Man's copyrighted works by publishing them publicly on the Temu Platforms as described above without license or authority.

209.     On information and belief, Temu knew that the infringing works did not belong to Temu and did have permission to exploit Wild Man's copyrighted works and knew that its acts constituted copyright infringement.

210.    On information and belief, Temu's acts were willful within the meaning of the Copyright Act.

211.    As a result of Temu's acts, Temu is liable to Wild Man for copyright infringement under 17 U.S.C. § 501.

212.    Temu's infringing acts have caused Wild Man to suffer substantial damages including but not limited to lost sales, confusion as to the source of the copyrighted works, and damage to reputation and goodwill.

213.    Wild Man is entitled to recover its losses and any and all profits Temu made as a results of its wrongful conduct under 17 U.S.C. § 504.  Alternatively, Wild Man is entitled to statutory damages under 17 U.S.C. § 504(c).

214.    Because Temu's infringement was willful, any recovery for Wild Man's statutory damages should be enhanced under 17 U.S.C. § 504(c).

215.    Wild Man is entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

**Prayer for Relief**

WHEREFORE, Wild Man prays that the Court order the following relief:

a.  Judgment that Temu directly infringed the '663 Patent under 35 U.S.C. § 271(a);

b.  Judgment that Temu indirectly infringed the '663 Patent under 35 U.S.C. § 271(b);

c.  Damages be awarded to Wild Man due to Temu's infringement of the '663 Patent;

d.  Judgment that Temu's infringement of the '663 Patent was willful, this case is exceptional, and an award of enhancement damages to Wild Man for Temu's infringement of the '663 Patent;

e.  Judgment that Temu directly infringed the '868 Patent under 35 U.S.C. § 271(a);

f.  Judgment that Temu indirectly infringed the '868 Patent under 35 U.S.C. § 271(b);

g.  Damages be awarded to Wild Man due to Temu's infringement of the '868 Patent;

h.  Judgment that Temu's infringement of the '868 Patent was willful, this case is exceptional, and an award of enhancement damages to Wild Man for Temu's infringement of the '868 Patent;

i.  Judgment and award of Wild Man's attorney fees;

j.  Judgment that Temu and those acting in concert with Temu should be preliminarily and permanently enjoined from infringing the '663 and '868 Patents;

k.  Judgment that Temu has willfully infringed and counterfeited Wild Man's registered WILD MAN DRINKING COMPANY® and THE KRAK'IN® marks;

l.  Judgment that Temu and those acting in concert with Temu should be preliminarily and permanently enjoined from infringing the Wild Man Marks and any marks in any manner likely to cause confusion, mistake or to deceive the relevant trade and public regarding the Wild Man Marks;

m.  Judgment that Temu and those acting in concert with Temu should be preliminarily and permanently enjoined from committing any acts that cause consumers or the relevant trade to believe that Temu's Krak'in Knockoffs are associated with or authorized by Wild Man;

n.  Judgment that Wild Man should be awarded damages for Temu's infringement of the Wild Man Marks;

o.  Judgment that Wild Man should be awarded treble and monetary damages pursuant to the Lanham Act, based on Temu's willful infringement of the Wild Man Marks;

p.  Judgment that Wild Man be awarded its attorneys' fees, costs, and any other litigation expenses relating to Temu's trademark infringement;

q.  Judgment that Temu infringed Wild Man's copyright;

r.  Judgment that Wild Man be awarded actual or statutory damages and attorney's fees for Temu's copyright infringement and be enjoined from infringing Wild Man's copyrights;

s.  Judgment that Wild Man be awarded prejudgment and post judgment interest in the amount to be determined;

t.  Judgment that Wild Man be awarded its costs; and

u.  Judgment that Wild Man be awarded such other relief as the Court may deem necessary and proper.

Dated: January 18, 2024            Respectfully Submitted,

/s/ Damien Nicholas Tancredi
Damien Nicholas Tancredi (DE No. 5395)
**FLASTER GREENBERG P.C.**
1007 North Orange Street, Suite 400
Wilmington, DE 19801
Telephone: 302-351-1910
Email: damien.tancredi@flastergreenberg.com


Michael J. Bonella (*pro hac vice* forthcoming)
Aakash K. Patel (*pro hac vice* forthcoming)
Coraleine J. Kitt (*pro hac vice* forthcoming)
**FLASTER GREENBERG P.C.**
1717 Arch Street, Suite 3300
Philadelphia, PA 19801


*Attorneys for Plaintiffs Wild Man Lab LLC and Wild Man Drinking Company*